IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **PONCIANO TORRES** | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 7:20-cv-162 |
| | § | |
| **JAIME AGUIRRE,** | § | |
| **In his individual capacity,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, PONCIANO TORRES, Plaintiff, complaining of JAIME AGUIRRE, in his individual capacity, and for cause of action will respectfully show unto the Court as follows:

## I.
## PARTIES

1. Plaintiff Ponciano Torres is an inmate in the Ector County Jail in Odessa, Ector County, Texas.

2. Defendant Jamie Aguirre, is an individual residing in Odessa, Ector County, Texas and is a police officer with the Odessa Police Department and may be served at his place of employment at the Odessa Police Department located at 205 N Grant Ave, Odessa, TX 79761 or wherever he may be found. Defendant Aguirre is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

3. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

4. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because the Defendant is domiciled and/or resides in the Western District of Texas, and all or a substantial part of the cause of action accrued in the Western District.

### III.
### FACTS AND ALLEGATIONS

5. On August 13, 2018, Plaintiff Ponciano Torres was driving from Odessa, Texas to Big Spring, Texas because his uncle had passed away that morning.

6. Defendant Odessa Police Officer Jamie Aguirre and Officer Ishmael Flores conducted a traffic stop of Plaintiff Ponciano Torres for failing to fully stop at a stop sign.

7. During the traffic stop, Officer Flores requested Mr. Torres to complete field sobriety tests.

8. Mr. Torres declined to complete the tests.

9. This agitated the officers.

10. Defendant Aguirre asked Mr. Torres if he had ever been to prison.

11. Mr. Torres was truthful and told Defendant Aguirre that he had been to prison.

12. Defendant Aguirre asked why Mr. Torres had been to prison.

13. Mr. Torres explained it was due to a drug offense.

14. Defendant Aguirre then went to his patrol car.

15. Defendant Aguirre returned and told Mr. Torres he was under arrest for failure to have insurance.

16. Defendant Aguirre told Mr. Torres to put his hands behind his back.

17. Mr. Torres complied.

18. Defendant Aguirre twisted Mr. Torres' right arm extremely hard and with more force than was necessary to handcuff Mr. Torres.

19. Mr. Torres asked for a warning or a fine for the ticket instead of being arrested since his uncle had just passed away that day and they were having a Rosary and funeral in the coming days.

20. Defendant Aguirre twisted Mr. Torres' right arm even harder than the first time, even though there was no reason to twist Mr. Torres' arm that hard in order to handcuff him.

21. Mr. Torres felt his arm pop and told Defendant Aguirre he had hurt his arm.

22. Defendant Aguirre used unnecessary and excessive force on Mr. Torres when he twisted his arm harder than necessary to handcuff him, which caused Mr. Torres' arm to break.

23. Defendant Aguirre placed Mr. Torres in the patrol car and instructed Officer Flores to search Mr. Torres' car.

24. When Defendant Aguirre twisted Mr. Torres' arm while handcuffing him, Mr. Torres was not resisting arrest.

25. When Defendant Aguirre twisted Mr. Torres' arm while handcuffing him, Mr. Torres was not pulling, fighting, or attempting to get away from Defendant Aguirre.

26. When Defendant Aguirre twisted Mr. Torres' arm while handcuffing him, Mr. Torres was not disobeying orders from either Defendant Aguirre or Officer Flores.

27. When Defendant Aguirre twisted Mr. Torres' arm while handcuffing him, Mr. Torres was complying with all orders being given to him.

28. When Defendant Aguirre twisted Mr. Torres' arm while handcuffing him, Mr. Torres was not threatening any other person or officer, including Defendant Aguirre or Officer Flores.

29. Mr. Torres was not armed with a weapon and had given Defendant Aguirre no reason to believe he was armed in any way.

30. Mr. Torres was not suspected of committing a serious or violent crime at the time Defendant Aguirre twisted his arm so hard he broke it.

31. Mr. Torres had not attempted to flee from Defendant Aguirre or Officer Flores prior to Defendant Aguirre twisting his arm so hard he broke it.

32. Defendant Aguirre transported Mr. Torres to the Ector County Jail.

33. At the Ector County Jail, the Book-in officer asked Mr. Torres if he was alright because Mr. Torres was holding his arm close to his body.

34. Mr. Torres explained to the Book-in officer that his arm hurt.

35. Defendant Aguirre told the Book-in officer that he was almost done with Mr. Torres and then Mr. Torres could go to the infirmary.

36. The Book-in officer told Defendant Aguirre he needed to call his supervisor and take Mr. Torres to the hospital before booking him into the jail because Mr. Torres' arm was extremely swollen.

37. Defendant Aguirre then took Mr. Torres to Medical Center Hospital.

38. Upon arrival at the hospital, Defendant Aguirre and Mr. Torres met Sgt. Ramirez.

39. Sgt. Ramirez and Mr. Torres spoke alone about what happened with his arm.

40. Sgt. Ramirez recorded the conversation.

41. During this conversation, the x-ray technician took Mr. Torres to have x-rays done on his arm.

42. Following the x-rays, Sgt. Ramirez and Mr. Torres resumed their conversation about how Defendant Aguirre hurt his arm by twisting it.

43. The x-ray technician returned to the room and informed Mr. Torres and Sgt. Ramirez that Mr. Torres' arm was broken.

44. Sgt Ramirez apologized to Mr. Torres for Defendant Aguirre's actions.

45. Defendant Aguirre and Officer Flores then took Mr. Torres back to the jail.

46. Officer Flores asked Mr. Torres if his arm was broken.

47. When Mr. Torres told him it was, Officer Flores told Mr. Torres he "should drink more milk."

48. Mr. Torres told him that they should not be so rough with people, and Officer Flores walked away.

49. As a direct result of the excessive use of force by Defendant Aguirre, Mr. Torres suffered a broken arm, physical pain and suffering, and mental anguish.

50. Defendant Aguirre was at all times acting under the color of law.

## IV.
## CAUSE OF ACTION

### Count One
### Excessive Force – Defendant Aguirre
### (Fourth Amendment pursuant to 42 U.S.C. § 1983)

51. Mr. Torres repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

52. Acting under the color of law, Defendant Aguirre deprived Mr. Torres of the rights and privileges secured to him by the Fourth and Fourteenth Amendments to the

United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

53. Mr. Torres brings this cause of action pursuant to 42 U.S.C. § 1983.

54. The amount of force used by Defendant Aguirre against Mr. Torres as described above, specifically but not limited to, when Defendant Aguirre unnecessarily twisted Mr. Torres' arm until it broke, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, and suffering upon Plaintiff.

55. A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

56. It is clearly established that officers cannot immediately resort to the use of force without attempting to use physical skill, negotiation, or even commands. *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).

57. Officers must assess "the relationship between the need and the amount of force used." *Newman*, 703 F.3d at 763 (quoting *Deville*, 567 F.3d at 167).

58. A constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest. *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, 139 S. Ct. 69, 202 L. Ed. 2d 23 (2018).

59. Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Darden*, 880 F.3d at 731.

60. Mr. Torres was not suspected of committing a felony offense when Defendant Aguirre unnecessarily twisted Mr. Torres' arm until it broke.

61. To the contrary, Mr. Torres was being arrested for failure to maintain insurance – a traffic offense.

62. Mr. Torres was not attempting to flee when Defendant Aguirre unnecessarily twisted Mr. Torres' arm until it broke.

63. Mr. Torres was standing stationary and following orders.

64. Mr. Torres was not threatening any officer or other person immediately prior to when Defendant Aguirre unnecessarily twisted Mr. Torres' arm until it broke.

65. Mr. Torres was not resisting arrest prior to when Defendant Aguirre unnecessarily twisted Mr. Torres' arm until it broke.

66. Mr. Torres had complied with Defendant Aguirre's orders.

67. Defendant Aguirre escalated to the use of force although Mr. Torres had not resisted.

68. It was completely unreasonable and unnecessary to twist Mr. Torres' arm as hard as Defendant Aguirre did to accomplish handcuffing Mr. Torres.

69. Mr. Torres was not resisting Defendant Aguirre.

70. The only purpose for twisting Mr. Torres' arm in the manner that Defendant Aguirre did could have been to cause pain and discomfort to Mr. Torres.

71. Defendant Aguirre accomplished that when he broke Mr. Torres' arm.

72. A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Mr. Torres, who was not threatening any officer or other person, was only suspected of committing the traffic offense of failure to maintain

insurance, was not attempting to flee, was not resisting arrest, was being compliant, and who the use of force was not warranted.

73. A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Mr. Torres, who was not threatening any officer or other person, was only suspected of committing the traffic offense of failure to maintain insurance, was not attempting to flee, was not resisting arrest, was being compliant, and who the use of force was not warranted.

74. A reasonable officer in Defendant Aguirre's shoes would know that twisting someone's arm to the point of breaking it, when that person was not threatening any officer or other person, was only suspected of committing the traffic offense of failure to maintain insurance, was not attempting to flee, was not resisting arrest, and was being compliant is clearly unreasonable and excessive.

75. As a direct result of the force used against him by Defendant Aguirre, Mr. Torres has suffered physical injury, pain and suffering, and mental anguish for which he sues herein.

76. These injuries were not caused by any other means.

## V.
## **PUNITIVE DAMAGES**

77. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

78. When viewed objectively from the standpoint of Defendant Aguirre, at the time of the occurrence, Defendant Aguirre's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

79. As a direct, proximate, and producing cause and the intentional, egregious, malicious conduct by Defendant Aguirre, Mr. Torres is entitled to recover punitive damages in an amount within the jurisdictional limits of this Court.

## VI.
## DAMAGES

80. Mr. Torres repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

81. Mr. Torres' injuries were a foreseeable event.

82. Those injuries were directly and proximately caused by Defendant Aguirre's use of excessive and unreasonable force against Mr. Torres.

83. As a result, Mr. Torres is entitled to recover all actual damages allowed by law.

84. Mr. Torres contends the Defendant Aguirre's conduct constitutes malice, evil intent, or reckless or callous indifference to Mr. Torres' constitutionally protected rights. Thus, Mr. Torres is entitled to punitive damages.

85. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mr. Torres was forced to suffer:

    a. Physical injuries;

    b. Physical pain and suffering;

    c. Physical impairment;

    d. Emotional distress, torment, and mental anguish; and

    e. Medical Expenses.

86. Pursuant to 42 U.S.C. § 1983 and § 1988, Mr. Torres seeks to recover, and hereby requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

87. If Mr. Torres prevails in this action, by settlement or otherwise, Mr. Torres is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

88. Mr. Torres respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Mr. Torres prays that judgment be rendered against Defendant Aguirre, for an amount in excess of the jurisdictional minimum of this Court. Mr. Torres further prays for all other relief, both legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,

/s/ *Scott H. Palmer*
SCOTT H. PALMER
Texas Bar No. 00797196
JAMES P. ROBERTS
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway,
Suite 540, LB 32
Addison, Texas 75001
Tel: (214) 987-4100
Fax: (214) 922-9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

ATTORNEYS FOR PLAINTIFF